Kidder, J.
This case was submitted to the court below without the intervention of a jury. The question presented for our determination is whether the facts found are sufficient to support the judgment, which was for the plaintiff. The court below found the facts as follows:
(1.) That during the month of July, 1879, the plaintiff resided at Sioux City, Iowa, and was engaged in business as dealer in land scrip and soldiers’ additional homesteads, and that the defendant, during that time, resided at Sioux Falls, Dakota.
(2.) That the defendant had at various times during several years purshased of plaintiff land scrip and soldiers’ additional homesteads.
(3.) That on July 5, 1879, the defendant wrote to the plaintiff at Sioux City, a letter, to which he added this postscript: “What “ is Cole’s scrip worth, and soldiers’ additional homesteads, now?”
(4.) That on July 8, 1879, plaintiff wrote to the defendant, in answer, as follows: “ Have to advise that I can furnish to-day “ Cole’s scrip at five dollars and additional eighties at three dollars “ per acre. Shall be pleased to hear from you at any time you “ may desire the paper.”
(5.) That this letter was received by defendant at Sioux Falls on the evening of July 11, 1879, and on the morning of the next *143 day he gent the plaintiff a telegram, as follows: “Send me two “ soldiers’ additional eighties (80’s) to-day.”
(6.) That the telegram was received by plaintiff the day it was sent, and on Üie same day he sent by express to defendant at Sioux Falls, four 80-acre pieces of soldiers’ additional, and inclosed in the express package his letter as follows: “ Per the request of your “ telegram of this date, stating, ‘Send two eighties additional to- “ day.’ I send yon the following described soldiers’ additional “ homestead scrip, collection on you, at $3 per acre for the two “ heir claims,, and $8.25 for the other's. I send you these so that “ you may take your choice of them. In heirs’ claims, can furnish “ deed from guardian of children. Please remit immediately, for “ the pieces that you desire, at the prices stated, and return the “ balance of them, as I have large demands and can use elsewhere.” “ Minor orphan children of Leonard L. Jenks, No. 693, La Crosse, Wis., 80 acres at $3.00, 240 “ Minor orphan children of E. M. Stacey, No. 406, Minneapolis, Minn., 80 acres at $3.00, 240 “ John w. Towne, No. 492, Council Bluffs, Iowa, 80 acres at $3.25, ____________ 260 “ Barton Eamsey, No. 4228, Ionia, Michigan, 80 acres at $3.25,--___________ 260 “ Making a total cost of- ______ $1,000 “ Please give this prompt attention and make immediate re- “ mittance for the paper you desire and return balance.”
(7.) That said package was received by defendant at Sioux Falls, on July 13, 1879, and defendant retained and used the two pieces described as John W. Towne, No. 492, Council Bluffs, Iowa, 80 acres; and Barton Eamsey, No. 4228, Ionia, Michigan, 80 acres; and on July 19, 1879, returned the other two pieces, together with $480, to pay for the two pieces retained.
(8.) That plaintiff has demanded of defendant $40 balance • claimed by him for the scrip retained, which has not been paid.
(9.) That on July 12, 1879, the market price at Sioux City for *144 the two pieces retained was $3.25 per acre, and that the other two returned were not standard in the market and were of less value.
It seems to us that there was no contract between the parties until the plaintiff, in response to the defendant’s telegram of July-12, stating, “ Send me two soldiers’ additional eighties (80’s) to- “ day,” sent him the two additional, and they were received by the defendant. There can be no contract without the mutual assent of the parties. This is vital to its existence. There can be none where it is wanting. The facts as found do not suggest any agreement of the parties before the telegram was sent. The defendant, on the fifth day of July, asked the plaintiff by letter: “ What is Cole’s scrip worth and soldiers’ additional homesteads, “ now?” On the eighth of July the plaintiff replied as follows: “ Have to advise that I can furnish to-day Cole’s scrip at $5 and “ additional eighties at $3 per acre.” This last letter was received by the defendant on the eleventh of July, and the next day he telegraphed for it; and on the same day they were sent to him at the price of $3.25, the then market price in Sioux City. .
It is plain, then, that the correspondence of the parties in relation thereto, prior to the sending the telegram, was merely in relation to the price of the scrip, advisory as to its value on a particular day, and solicitous to obtain the patronage of the defendant. There is nothing therein indicating the aggregatio men-tvwm absolutely necessary to constitute a contract. The defendant inquired only as to the price on a day stated. He did not say nor intimate that he wanted to purchase, and the plaintiff replied to him, giving him the price on such a day, and that he would be pleased to hear from him ££ any time you may desire the paper,” which clearly indicates that the plaintiff did not consider that he had made — closed—a contract; or why should he have used the words, when <£ you may desire the paper.” He did not even offer to sell. He advised him ' that it is worth to-day. The plaintiff sent the scrip “per the request of” the defendant’s “ telegram of *145 M this date.” There was no contract between the parties until the scrip war; received by the defendant, and when he accepted it he did so at the price specified in the letter in which it was inclosed, viz., $3.25 per acre. There is no connection between the letter of the 8th and the telegram. The latter in no manner refers 'to the former.
The learned counsel of the defendant, on the argument, relied largely upon Utley v. Donaldson, 91 U. S., 29, and claimed that in many of its features it is like this case; but we fail to see the similitude. That case can be stated thus: The plaintiffs were brokers and stock dealers in New York, and the defendants in St, Louis, and they were business correspondents of each other. On May 21, 1871, the defendants telegraphed the plaintiffs as follows: •“ Make best bid, 15 Central Pacific, quick. Donaldson & Fea- “ ley.” On the next day these defendants received a dispatch from the plaintiffs as follows: “We will buy Central Pacific at a “ hundred and two and a half, (102-^.) Utley, Dougheety & “ Scott.” And on the day of its . receipt the defendants sent another telegram to the plaintiffs as follows: “ "We accept your c‘ offer, 15 Central, 102-|. Donaldson & Fbaley.”
In this case a bid was solicited, naming the amount. An anic swer, “We will buy,” etc. And a reply, “We accept your offer,” etc. This was a contract — the minds of the parties met; but in what particular it is parallel to the case at bar is what I have not yet discovered. There were other points in the case, but so entirely unlike the one under consideration I do not take time to refer to them.
Reference was made in argument, by counsel for defendant, to several authorities which in substance held the familiar doctrine, “ That when a proposal is made by letter, the deposit of a letter of “ acceptance in the post by the person to whom the proposal is “ made, or the sending of a telegram announcing acceptance, com *146 M pletes the contract.'” But snch is not the case we are now eon-sidering. So far as I have examined the authorities upon the question in issue, there is no conflict; and, without multiplying,. I desire to cite Knight v. Cooley, 34 Iowa, 218, as one nearer in point than any other to which our attention has been called. In this case the plaintiff wrote to the defendant and asked “ whether “ he (defendant) was the owner of the south two-fifths of lot 469, “ and, if so, what was the price of same.” The defendant answered:
“ Friend, Knight — Tours is received. The lots are so incum- “ bered it would be difficult to make title at once. Price, $1,700 “ and $1,500 net, and cheap. Truly, . D. N. Cooley.”
May 22dthe plaintiff replied:
“ Tours of the 18th is at hand. I will take the lots on the “ terms proposed by yon' in it, and herewith send you draft for “ $100, on account of the bargain. The balance of the money is “ ready, and will be paid immediately on good, clear title being “ made. I wish you would proceed to have the title made at your “ earliest convenience. Tours, M. J". Knight.”
One of the parties was in Washington city, the other at Du-buque, Iowa. The plaintiff sued the defendant for a breach of the contract, and relied upon the above correspondence. The District Court gave judgment for the plaintiff, but the Supreme Oourt reversed it, holding that there was no contract, and says: “ The instruction given by the Court to the jury, to the effect “ that the correspondence, taking either the statement of plaintiff or “ defendant as to the contents of the plaintiff’s first letter, consti-w tuted a contract, is erroneous. Defendant’s evidence is to the “ effect that the letter simply inquired if he was the owner of the i£ property, and the price thereof. It made no proposition to pur- “ cha«e, named no purchaser, and, in fact, contained nothing which “ could have been so understood. The answer to this letter sim- “ ply states a price which defendant regards as cheap, and the fact •‘£ that it would be difficult to make title at once. We do not *147 “ understand the letter to contain a proposition to sell the lots. “ The mere statement of the price at which property is held, can- “ not be understood as an offer to sell. The seller may desire to “ choose the purchaser, and may not desire to part with his prop- “ erty to any one who offers his price. We regard the corres- “ pondence, taking it as given in defendant’s testimony, so far as “ it goes, as amounting, on defendant’s part, simply to a negotia- “ tion, and not to a binding offer. It required the acceptance by “ him of the offer contained in plaintiff’s last letter, to create a “ binding contract.”
So, in the case before us, as we have already observed, prior to the telegram there had been no proposition to buy, nor an offer to sell, but merely an inquiry as to the value on a particular day, and a statement as to its value on such day.
Further discussion seems to be useless. It is clear that the judgment of the court below was right, and it is therefore
Affirmed.
All the Justices concurring.